UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BARRY JONES                          :
                                     :
          Plaintiff                  :
                                     :      Civil No. 1 :CV-16-1537
          v.                         :
                                     :      (Judge Caldwell)
BRENDA TRITT, SUPERINTENDENT,        :
*et al.*,                            :
                                     :
          Defendants                 :


*M E M O R A N D U M*

I.    *Introduction*

          Before the court are separate motions to dismiss filed by the two groups of

defendants in this action who are employed at the Frackville State Correctional

Institution (SCI-Frackville), in Frackville, Pennsylvania:  the prison contract medical care

providers and the Pennsylvania Department of Corrections (DOC) employees.[1]

          Presently before the Court is the Medical Defendants' motion to dismiss

(ECF No. 25) and the DOC Defendants' Motion for Judgment on the Pleadings (ECF

No. 44).  For the reasons that follow, the Medical Defendants' motion will be granted in

part and denied in part, and the DOC Defendants' motion will be granted.  Dr. Pandya

will be directed to file an answer to the Complaint.

---

[1]  Separate counsel represents each group of Defendants.

II.    *Standard of Review*

The DOC Defendants have filed a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c).[1] Since the motion argues that the amended complaint fails to state a claim, we review it under the standard used for motions to dismiss under Fed. R. Civ. P. 12(b)(6).  *See Turbe v. Gov't of Virgin Islands,* 938 F.2d 427, 428 (3d Cir. 1991); *Bangura v. City of Philadelphia,* 338 F. App'x 261, 264 (3d Cir. 2009) (nonprecedential).

At the motion to dismiss stage, Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  When ruling on a motion under 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Bronowicz v. Allegheny Cty.*, 804 F.3d 338, 344 (3d Cir. 2015) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).  In general, documents properly considered at the motion to dismiss stage are limited to "the complaint, exhibits attached to the complaint[,] and matters of public record."  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the … claim is and the grounds upon which it rests." *Phillips*, 515 F.3d at 232 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127

---

[1]  The DOC Defendants filed an answer to the Complaint on January 11, 2017.  *See* ECF No. 30.

S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  *See Santiago v. Warminster Township*, 629 F.3d 121, 130 - 31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  *Id.* at 130 (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  *Id.* at 131 – 32.  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965).  A claim is facially plausible when the plaintiff pleads facts "that allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678, 129 S.Ct. at 1949.

Pro se pleadings must be liberally construed and "held 'to less stringent standards than formal pleadings drafted by lawyers.'"  *Fantone v. Latini*, 780 F.3d 184 (3d Cir. 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 – 21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972)); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). Pro se litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile.  *See Estate v. Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 861 (3d Cir. 2014).  A complaint that sets forth facts which affirmatively

demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

With this standard in mind, the following is the background to this litigation, as Plaintiff alleges it.

III. *Allegations of the Complaint*

On July 19, 2016, Barry Jones, a state inmate serving a life sentence, filed this civil-rights lawsuit concerning his medical care, interference with his legal mail, and unauthorized deductions from his inmate account. All events occurred at his present institution, SCI-Frackville. Named as Defendants are the following contract medical care providers: Dr. Haresh Pandya and Nelson Iannuzzi, Certified Registered Nurse Practitioner (CRNP). Also named as Defendants are the following Pennsylvania Department of Corrections staff members employed at SCI-Frackville: Superintendent Brenda Tritt; Captain Downs; Vickie Stanishefski, Corrections Health Care Administrator (CHCA); and Daniel Zaramber, RN.

Jones attaches over a hundred pages of exhibits to his Complaint. The exhibits consist of an Affidavit, grievance materials, assorted requests to staff members, balance statements from his inmate account, and medical progress notes from September 2001 through March 21, 2005. The Medical Defendants submit the missing

portions of the grievances submitted by Plaintiff in support of their motion to dismiss.

Jones filed new and addition medical records in connection with his opposition brief.[2]

1.      *Intentional Interference with Jones' Prescribed Successful*
        *Medical Care for his Sarcoidosis.*

Barry Jones is a 59-year-old male who has been in prison for over ten years. He arrived at SCI-Frackville on May 5, 1997, with a history of pruritus (severe itching of the skin), Hepatitis C and seizures. (ECF No. 1, pp. 13 and 16). On November 28, 2007, following a skin biopsy, a previous medical director of SCI-Frackville diagnosed Jones as having Sarcoidosis. (*Id.*, p. 6, ¶¶ 7 - 8). At that time his treating physician ordered no substitute medication would be prescribed for Jones' sarcoidosis and that he would be kept on "this medication regimen" of Eucerin cream. (*Id.* 9; *see also* ECF No. 40-4, p. 3).

A.      *Grievance No. 519776*

In July 2014, Wexford was the contract medical care provider at SCI-Frackville. Dr. Harewood (non-defendant) was the facility medical director. On July 23, 2014, Jones filed Grievance 519776 after his prescribed medication for his itching and burning skin, Amlactin and Vitamin E, were not renewed by Dr. Harewood. (ECF No. 26-1, Grievance 519776, pp. 13 – 22). At that time, Jones had not been examined by

---

[2] Where the submitted documents relate to the claims set forth in the Complaint they will be considered. The court will not consider any documents or claims presented in the new documents provided by Jones related to his care for chronic diseases other than that provided for his Sarcoidosis during the period of time set forth in the Complaint. To hold otherwise would improperly allow him to amend his Complaint via the documents attached to his opposition brief.

any Wexford medical staff "in the year and some odd months" they provided services at SCI-Frackville.  (*Id.*, p. 22).

On July 23, 2014, Nurse Zaramber provided the initial response to Jones' grievance.  (*Id.*, p. 21).  He reported that "grievant was last noted with integumentary issues on 10/18/13" and that he was assessed multiple times in the medical department following that visit "with no noted mention of skin complaints or complaints about Vitamin E.  Grievant refused a grievant-generated sick call on 7/18/14."  (*Id.*)  Nurse Zaramber also reported that "[a] Chronic Clinic Assessment on 06/23/14 does not note a skin issue or grievant complaint pertaining to a skin issue or Vitamin E under the physical exam or notes sections.  A Chronic Clinic Assessment on 11/17/13 notes an objective integumentary assessment WNL (Within Normal Limits).  All medication prescriptions are determined by the ordering provider based on clinical findings."  (*Id.*)  Superintendent Tritt denied Jones' grievance appeal noting that "only licensed physicians can prescribe medication and often times they have different philosophies than their predecessors."  (*Id.*, p. 18).  At the final level of review of his grievance, the Director of the Bureau of Health Care Services "reviewed the medical record and has determined the medical care provided [Jones] was reasonable and appropriate."  (*Id.*, p. 14).

B.    *Grievance o. 527991*

By September 2014, Wexford and Dr. Harewood, were no longer providing medical services at SCI-Frackville.  On September 2 and 3, 2014, Jones

- 6 -

signed up for sick call so he could be seen by the new medical care provider regarding his skin condition. (ECF No. 1, p. 37). Dr. Pandya looked at Jones' skin "and discussed [his] disease in detail." (*Id.*) Dr. Pandya said he "would review [Jones'] file and prescribe [his] previous medication." (*Id.*) The following week Jones discovered he was only prescribed Vitamin E lotion. (*Id.*) Jones signed up for sick call again "to explain to Dr. Pandya, Vit-E lotion is inadequate to treat [his] Sarcoidosis, it was prescribed twice in the past, and as recently as last year." (*Id.*) Dr. Pandya admitted to limiting his medical review to Jones' present file. Dr. Pandya stated his condition was "not that bad anyway" which Plaintiff disputes because ninety percent of his body was covered. He claims Dr. Pandya was deliberately indifferent to his serious medical needs by prescribing only Vitamin E lotion for his sarcoidosis condition. (*Id.*)

On October 10, 2014, CHCA Stanishefski submitted the initial response to the grievance, denying it.

> 1-2. On 9-4-2014 the grievant signed up for sick call for a skin disorder. The medical director evaluated the grievant and determined he had a few raised lesions on his knees and elbows. The medical director prescribed a moisturizing lotion. Vitamin E lotion at the time of the visit.
>
> 3. The grievant did sign up for a sick call on 9-8-2014 but for a different problem other than the skin disorder. The grievant was scheduled for a return visit on 9-11-2014 regarding his skin, after the medical director had time to review the past 7 medical records volumes.
>
> 4. The grievant was seen in follow up on 9-11-2014 by the medical director and argued with the medical director he only wanted Eucerin Cream. The medical director provided the grievant with education that he must try Vitamin E lotion. He also educated on the nature of his illness. The grievant does not have 90% skin involvement as stated within this

> grievance, he had a few areas on knees and elbows and had dry skin.
>
> 5. In a period of 7 days the medical director saw grievant 3 times and reviewed 7 volumes of medical records. This is not ignoring grievant.
>
> 6. The grievant was seen 3 times in a period of 7 days and never had bleeding skin as described within this grievance. The grievant was provided proper treatment.

(ECF No. 26-1, pp. 32 – 33). Jones appealed the CHCA Stanishefski's initial response to his grievance. (*Id.*, pp. 30 – 31). Plaintiff claimed the initial response was "completely fabricated". (*Id.*, p. 30). He asserted Dr. Pandya falsified his medical record if he only recorded Plaintiff as having "a few raised lesions on his knees and elbows." (*Id.*) He notes that on October 3, 2014 Dr. Pandya discontinued the Vitamin E lotion and prescribed him Cetaphil Cream. (*Id.*, p. 30 and 28). Superintendent Tritt in her response to Jones' appeal noted that "[t]here is no evidence to support" his assertion that the "initial response was fabricated." (*Id.*, p. 29). Superintendent Tritt noted "[Jones] was receiving appropriate medical care by qualified licensed physicians." (*Id.*)

Asserting that the failure to prescribe him more than a moisturizing cream for his skin disease was a cost driven decision he argues that Dr. Pandya and CRNP Iannuzzi, are unqualified as they fail to review his medical record and turn a "blind-eye" to the "granulomas" spreading all over his body. (*Id.*, p. 28). At final review, the Chief Grievance Officer referred the matter to the Director of the Bureau of Health Care Services to review Jones' complaint of inadequate care. (*Id.*, p. 27).

On January 12, 2015, the Director reviewed Jones' complaint of inadequate care for his Sarcoidosis skin condition. (*Id.*, p. 25). Upon reviewing Jones' medical record he determined the medical care provided was reasonable and appropriate. (*Id.*) On January 15, 2015, the Chief Grievance Officer upheld the Initial Response to the grievance and denied the appeal. (*Id.*, p. 24).

C.     *Grievance No. 528000*

On September 17, 2014, Jones filed Grievance 528000 after a sick call encounter with CRNP Iannuzzi. (*Id.*, p. 44). When Jones asked to see a doctor, CRNP Iannuzzi said "he didn't need to see a doctor." (*Id.*) Although CRNP Iannuzzi acknowledged Jones' Sarcoidosis diagnosis, he "visual diagnos[ed]" Jones as suffering from dry skin. (*Id.*) Plaintiff also took issue with CRNP Iannuzzi's comment that his past medical history was irrelevant to his treatment and sarcastically saying he could purchase Eucerin-like products in the commissary, which have provided Jones relief in the past. (*Id.*)

CHCA Stanishefski denied the grievance on October 10, 2014. (*Id.*, pp. 42 – 43). She made the following findings after reviewing Jones' medical record.

> 1.  The grievant signed up for sick call on 9-17-2014 that his skin disorder which had been addressed by the medical director on several different occasions within the past week. Please see grievance response # 527991 for a detailed account of these visits.
>
> 2.  The grievant informed the CRNP at the visit on 9-17-2014 that his skin condition only responded to Eucerin cream nothing else. The CRNP only had the opportunity to see the

grievant' s exposed skin because the grievant refused any further examination.

3. The CRNP did not make a false statement, the CRNP determined the grievant had dry skin on his limited examination.

4. The grievant was informed in the event he did not want to use the prescribed treatment he could purchase other products in commissary.

5. The CRNP prescribed diagnostic labs, and x-rays. The grievant had previously been provided a moisturizer lotion and surveillance for effectiveness of the prescribed treatment 2 weeks prior. The treatment was appropriate.

(*Id.*, p. 42). Jones filed an appeal of this response asserting that many of CHCA Stanishefski's remarks were false. (*Id.*, p. 41). Jones remarked that CRNP Iannuzzi "is not a doctor" who is "unqualified to diagnose any condition relating to skin visually". (*Id.*) He also corrected that it was Dr. Pandya, and not CRNP Iannuzzi, that ordered "the useless labs, x-rays and moisturizers". (*Id.*) Superintendent Tritt upheld the initial grievance response on October 23, 2014. (*Id.*, p. 40). In his appeal to final review, Jones identifies the focus of his grievance, "[m]y issue is with the unprofessional, sarcastic callous disregard to a serious medical condition to suggest buying anything from commissary, without a[n] examination. Prior to these changes in Health Care Provider's in the past (16) months my disease was successfully treated for nine years, than (sic) for the Nurse Practitioner to state my 'Medical record/history,' is irrelevant to my present treatment is a ludicrous statement for a medical professional to make." (*Id.*)

At final review, Jones' grievance appeal was referred to the Bureau of Health Care Services. (*Id.*, pp. 33 – 38). On January 15, 2015, the grievance appeal

was denied based on the Bureau of Health Care Services' review and determination that the medical care provided Jones was reasonable and appropriate. (*Id.*, p. 35).

      D.    *Grievance No. 532519*

On October 21, 2014, Jones filed Grievance 532519 concerning an October 9, 2014 sick call visit with Dr. Pandya where he wanted to discuss how to use the newly prescribed 3 oz. tube Cetaphil cream "when [his] entire body is affected with bumps, open bleeding le[s]ions, scarred inflamed dead tissue." (*Id.*, p 62). At the visit Dr. Pandya falsely reported that his skin was "getting better". (*Id.*) Jones inquired why Dr. Pandya was "trying all these medications for dry skin, when the dermatologist didn't prescribe anything until after a biopsy." (*Id.*) Jones was told that his "condition fluctuates … there are other thing[s] to treat Sarcoidosis." (*Id.*) Jones grieved that Dr. Pandya was "going to ignor[e] a previously prescribed treatment that [was] successful for 9 years" knowing his condition was "getting worse evident by the discontinuing of the Vitamin E lotion." (*Id.*) Initially CHCA Stanishefski rejected the grievance as redundant to a previous grievance. (*Id.*, p. 61). Jones disputed that his prior grievance, 528000, was related to the issue presented in grievance 532519. (*Id.*, p. 60). Superintendent Tritt denied his appeal. (*Id.*, p.58) At final review the Chief Grievance Officer remanded the matter for a revised response. (*Id.*, pp. 56 – 57).

On December 10, 2014, CHCA Stanishefski denied the grievance, stating the following.

> 1-2. On 10-3-2014 the grievant did see the medical director
> due to a complaint that prescribed skin lotion was causing

him to be itchy. The Medical director provided the grievant education and added Cetaphil cream which is a topical emollient. On 10-7-2014 the grievant received the newly prescribed cream. On 10-9-2014 the grievant saw the medical director with a complaint his sarcoidosis was worse, the clinical findings of the medical director reveals the grievant skin was better than when seen on 10-3-2014. The raised lesions were gone, the areas of concerns by the grievant were black heads and hyperpigmentation but not raised. The grievant skin was not as dry. The physician also noted the grievant did not agree with his findings. The grievant was educated on the proper use of the prescribed product. The Medical Director followed up with an additional visit with the grievant on 10-29-2014 and again determined the grievant skin was improved and reordered the Cetaphil Cream for a longer duration. According to the Electronic medication record system the grievant is 0% compliant with the prescribed treatment since 10-29-2014 to the present.

3. The grievant was provided a topical emollient for his skin condition which is the same classification of The cream previously ordered.

4. The grievant allegation the conduct of the medical staff is cost saving effort is not factual the retail price of the cetaphil is double the cost of the previously ordered cream.

5. The grievant has been evaluated by a qualified health care professional, who has provided a skin care product to improve the grievant skin concerns as well as education on proper skin care.

(*Id.*, pp. 54 – 55).

On January 27, 2015, Jones filed an appeal stating that "[t]he Grievant claims he has <u>Sarcoidosis</u> not dry skin as the unqualified medical staff continued to falsely assert." (ECF No. 1, p. 123). He accuses Dr. Pandya of falsifying his medical record if he recorded that his skin was "better". (*Id.*) He added:

Ms. Stanishefski (CHCA) response, makes sense to any rational thinking person, at 3, grievants was provided a

> topical emollient for his skin which is the same classification
> of the cream previously ordered. The same classification, is
> not the same medication, 9 years of successful treatment is
> being completely ignored, the dermatologist exact words,
> were, Mr. Jones we are going to keep you on this [cream],
> because it's seen to be the only medication that works …
> verbatim.

(*Id.*) Superintendent Tritt upheld the initial grievance response. (*id.*, p. 125). Jones' grievance appeal to final review asserts that the initial response was not factual. "Grievant continues to suffer from extreme breakout of granulomas, also called Sarcoid." He accuses SCI-Frackville medical staff of "interfer[ing] with a specialist prescribed successful regiment … opting for an easier and less efficacious treatment of grievants condition." (*Id.*, p. 126). He claims his medical records contain "false entries" and "can only be contradicted by one look at [his] skin." (*Id.*)


    2.    *Jones' Inmate Account*

On November 26, 2014, SCI-Frackville's "security recorded Anthony Sutton arranging to have money sent into [Jones]". (ECF No. 1, p. 100). On January 7, 2014, $500.00 was deposited in Jones' inmate account by inmate Sutton's daughter-in-law, Sharon Pannell. (*Id.*) Prison officials immediately placed the money in escrow. (*Id.*, pp. 71 – 72, and p. 101). Captain "Dans" issued Jones misconduct #B723363 on February 2, 2015 related to these funds. (*Id.*, pp. 113 - 14).

The funds were released from escrow on April 8, 2015. (*Id.*, p. 97). The money was deducted from Jones' account the same day. (ECF No. 7-1, p. 1). A notation was entered in Jones' inmate account that the $500 dollars was deemed

"contraband/per Capt. Downs." (*Id.*)  The money was confiscated as contraband as part of the sanction imposed for Misconduct #B723363.  (*Id.*, p. 114).  Capt. Downs placed the money in the Inmate General Welfare Fund rather than returning it to the sender, Ms. Pannell.  (*Id.*, p 107).  Jones argues that the funds were removed from his account without any notice or due process.  (ECF No. 1, p. 7).  Superintendent Tritt is alleged to be "preventing" the return of the funds to the sender in violation of prison policy.  (*Id.*)

3. *Personal and Legal Mail*

At some point after the $500 dollars was placed in escrow, Jones learned his inmate account was frozen by Security Captain Downs.  (*Id.*, p. 5).

Jones alleges that prison officials held his personal and legal mail, for over a month in one instance, without his knowledge due to lack of insufficient funds because his inmate account was "arbitrarily" frozen.  (*Id.; see also* p. 74).  Specifically he states his January 22, 2015, letter to his sister, concerning a disbarment petition against his criminal attorney, was returned to him for lack of sufficient funds.  He also asserts it was opened.  (*Id.*, p. 5 and p. 74).

On February 2, 2014, Jones took several bulk mailings to the property office with the appropriate cash slips.  (*Id.*, p. 62).  These mailings were directed to the United States District Court for the Eastern District of Pennsylvania and the Philadelphia District Attorney's Office.  (*Id.*)   The mailings related to his criminal case,

*Commonwealth v. Jones*, CP-51-CR-0211883-1988 (Phila. Ct. Com. Pl.).[3]  On February

26, 2015, Jones placed additional mailers in the prison postal system bound to the

Eastern District court.  (*Id.*, p. 5).  Jones recopied the items posted on February 26,

2015 and remailed them to the Eastern District on March 2, 2015.  (*Id.*)  On March 2,

2015, Jones received six cash slips reflecting the mailing of his February 2 and

February 26 mailings.  (*Id.*, p. 64).  The following day he received 2 additional cash slips

for his March 2 mailings.  (*Id.*, p. 5).

        Mail from SCI-Frackville is collected on the block, sent to Security and

then forwarded to neighboring SCI-Mahanoy for processing and posting.  Jones

believes his outgoing legal mail was unlawfully withheld by SCI-Frackville prison officials

prior to forwarding it to SCI-Mahanoy for mailing.  (*Id.*, pp. 56 – 66).

IV.    *Discussion*

    1.    *Denial of Appropriate Care for Jones' Sarcoidosis*

        The Eighth Amendment prohibits prison officials from being deliberately

indifferent to an inmate's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 105-

06, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976).  In the medical context, a Plaintiff raising

an Eighth Amendment claim "must make (1) a subjective showing that the defendants

were deliberately indifferent to his or her medical needs and (2) an objective showing

that those needs were serious."  *Pearson v. Prison Health Serv.*, 805 F.3d 526, 534 (3d

Cir. 2017) (internal quotations and citations omitted).  "To act with deliberate

---

[3]  The court takes judicial notice of the docket in Jones' criminal case, available through the Unified
Judicial System of Pennsylvania Web Portal at https://ujsportal.pacourts.us/.

indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009). The Third Circuit Court of Appeals has found deliberate indifference where a prison official knows of an inmate's need for medical care and intentionally refuses to provide it, delays it for non-medical reasons or prevents the prisoner from receiving needed or recommended treatment. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1992). A medical need is "serious" if "it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation omitted). "The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment." *Id.*

At the same time, bare allegations of medical malpractice are not sufficient to establish a constitutional violation. *Allah v. Hayman*, 442 Fed. App'x 632, 635 – 36 (3d. Cir. 2011) (citing *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004)). Deliberate indifference is more than malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *See Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994) (To be deliberately indifferent, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *see also Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n. 2 (3d Cir. 2002) (claims of medical

malpractice, absent evidence of a culpable state of mind, do not constitute deliberate indifference under the Eighth Amendment).

"[T]he deliberate indifference standard affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients," and courts must "disavow any attempt to second-guess the propriety or adequacy of [their] particular course of treatment so long as it remains a question of sound professional judgment." *Pearson*, 850 F.3d at 538 (internal citation and quotation marks omitted). Where "a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993)).

> Nonetheless, there are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements. For instance, prison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for an easier and less efficacious treatment of the inmate's condition. Nor may prison authorities deny reasonable requests for medical treatment … when such denial exposes the inmate to undue suffering or the threat of tangible residual injury. And, knowledge of the need for medical care may not be accompanied by the … intentional refusal to provide that care.

(*Id.* at 228). However, a prisoner's disagreement with the doctor's professional judgment, or a difference of medical opinion between two physicians, does not state an Eighth Amendment claim. *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990).

Yet, "a non-medical prison official" cannot "be charge[d] with the Eighth Amendment scienter requirement of deliberate indifference" when the "prisoner is under the care of medical experts" and the official does not have "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Spruill*, 372 F.3d at 236; *see also Durmer*, 991 F.2d at 60 (Non-physician defendants cannot "be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.").

First we will address the Medical Defendants' motion to dismiss Jones' Eighth Amendment claim. The Medical Defendants argue that Jones' has not argued that he has been denied care, rather, he "simply disagrees with the medical staffs' findings and recommended treatment course." (ECF No. 26, p. 12). There is no doubt that Jones' was repeatedly seen by Dr. Pandya in September and October 2014 for his various medical ailments, including his complaints of his skin condition. The parties agree that Jones has a diagnosis of Sarcoidosis which, in the past, has presented itself as raised and painful lesions called granulomas. The issue Jones presents in his Complaint is whether Dr. Pandya's persistent use of creams, previously proven to be ineffectual in the treatment of Jones' skin ailments, demonstrates Dr. Pandya's indifference to Jones' serious medical needs. At the motion to dismiss stage, even with the abundance of medical records before us (which Jones claims are fabricated), we conclude Jones states a viable Eighth Amendment claim against Dr. Pandya concerning the care of his Sarcoidosis. *See White*, 897 F.2d 110 ("What may state a cause of

action is Dr. Napoleon's persistence in using Dilantin, or Dilantin plus phenobarbital, after Nazario told him that his seizures had increased in violence and frequency. A jury might conclude from this that Napoleon is indifferent to Nazario's serious medical needs.")

However, with respect to CRNP Iannuzzi, we conclude Jones fails to state an Eighth Amendment claim based on Grievance 52800 where Jones asserted CRNP Iannuzzi was "unprofessional  and sarcastic" during a September 17, 2014, sick call encounter.  (ECF No. 26-1, p. 44).  Taking the allegations as true, CRNP Iannuzzi's demeanor, while unprofessional, does not rise to the level of deliberate indifference. Following Jones' first visit with Dr. Pandya on September 2 or 3, 2014, he prescribed Jones Vitamin E lotion.  Other diagnostic testing was also ordered.  The following week Jones learned of the Vitamin E lotion prescription.  Effective or not, Jones affirms that he was prescribed a cream and Vitamin E by the previous provider and did not have a breakout of his Sarcoidosis until Dr. Pandya was SCI-Frackville's Medical Director. CRNP Iannuzzi did not ignore his concerns that day, and advised him that he could purchase other ointments in the commissary if he chose not to follow the prescribed treatment.  Again, while Jones perceived CRNP Iannuzzi's attitude improper, this encounter does not demonstrate his deliberate indifference to a serious medical need. Accordingly, Jones' claims against CRNP Iannuzzi will be dismissed.  Given the extensive documentation accompanying the Complaint, we find that any further amendment of Jones' claim against CRNP Iannuzzi based on the events in Grievance 528000 would be futile.

Next, we turn to Jones' Eighth Amendment medical claims against the DOC

Defendants; CHCA Stanishefski and Nurse Zaramber.[4]  The DOC defendants argue

they had no personal involvement in the allegations forming the basis of Jones' Eighth

Amendment claims concerning the treatment of his sarcoidosis and that they are non-

medical personnel who cannot prescribe medications and they were aware Plaintiff was

receiving treatment from qualified medical professionals.  (ECF NO. 46).  We agree.

Liability under § 1983 requires the plaintiff to plead the defendant's

personal involvement in the alleged constitutional violation, which "can be shown

through allegations of personal direction or of actual knowledge and acquiescence."

*Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 72 (3d Cir. 2011)

(quotation marks omitted).  CHCA Stanishefski and RN Zaramber were not involved in

making medical decisions concerning Jones' care.  Jones names them as defendants

based on his dissatisfaction with their initial responses to his medical grievances.  Such

allegations are insufficient to allege their personal involvement in his Eighth Amendment

claims.  *See Washington v. Showalter*, 494 F. App'x 268 (3d Cir. 2012); *see also Brooks*

*v. Beard,* 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation

that prison officials and administrators responded inappropriately, or failed to respond to

a prison grievance, did not establish that the officials and administrators were involved

in the underlying allegedly unconstitutional conduct).  Finally, Jones cannot allege that

their grievance responses demonstrate their deliberate indifference to his health as they

are non-medical professionals unable to prescribe care for him.  *Durmer*, 991 F.2d at

---

[4]  Jones did not file a brief in opposition to the DOC Defendants' motion for judgment on the
pleadings.

60.  Accordingly, Jones' Eighth Amendment claims against CHCA Stanishefski and RN Zaramber will be dismissed.  Given the extensive documentation accompanying the Complaint, we find that any further amendment of Jones' claim against these defendants based on their grievance responses would be futile.

    2.    *Jones' Access to Courts Claim against Capt. Downs.*

    "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts."  *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). In order to state a claim of the denial of access to the courts, a prisoner must allege that his efforts to pursue a non-frivolous legal claim were hindered due to defendant's actions and that he suffered actual harm.  *See Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179, 2187, 153 L.Ed. 413 (2002).  The inmate must plead facts showing how his claims "may no longer be pursued as a result of defendant's actions."  *Monroe*, 536 F.3d at 206 n. 9.

    Here, Jones asserts that Captain Downs interfered with his access-to-courts when he delayed the mailing of legal documents to the Eastern District of Pennsylvania and the Philadelphia District Attorney's Office.  Jones does not assert that his filings were not received by the court or that he was unable to pursue a non-frivolous legal claim based on Capt. Down's alleged actions.  Although Jones did not file a response to the DOC Defendants' motion, the court reviewed the docket in Jones' criminal case to determine whether he could plausibly remedy this deficiency via amendment.  Upon review of Jones' criminal docket we will not grant Plaintiff the opportunity to amend his access-to-court claim against Capt. Downs.  In early 2015,

Jones filed a second Post Conviction Relief Act (PCRA) Petition. *See Commonwealth v. Jones*, CP-51-CR-0211883-1988 (Phila. Ct. Com. Pl.) (docket). His first PCRA was denied as untimely. His second PCRA petition was also denied as untimely. (*Id.*) Accordingly, this claim will be dismissed without leave to amend.

   3.   *Confiscation of $500 Dollars from Jones' Account without Notice*

Jones claims that the withdrawal of the $500 dollars from his account, which was sent to him by a family member of another inmate, without a hearing violated his Due Process rights. He also implies Supt. Tritt and Capt. Downs' failure to return the confiscated funds to the woman who sent it to him somehow violates his constitutional rights. (ECF No. 1, p. 107, Grievance No. 564234).

With respect to the prison officials' failure to return the confiscated money to the sender, the DOC Defendants are correct that Jones cannot vicariously assert the rights of others. *See Weaver v. Wilcox*, 650 F.2d 22, 27 (3d Cir. 1981) (inmates do not have standing to sue on behalf of fellow prisoners).

That leaves for resolution Jones' Due Process claims as to removal of the contraband funds from his account without a hearing. The Third Circuit Court of Appeals has held that an inmate's interest in his prison account constitutes a property interest that is entitled to some measure of due process protection before it can be seized, assessed, or otherwise impaired. *See Burns v. Pa. Dep't of Corr.*, 544 F.3d 279, 291 (3d Cir. 2008). In order to show a violation of the right to be protected by due process, a prisoner must show (1) that the state deprived him of a protected interest in life, liberty, or property; and (2) that the deprivation occurred without due process of law.

*Id.*, at 285; *see also Reynolds v. Wagner*, 128 F.3d 166, 179 (3d Cir. 1997) ("[I]nmates are entitled to due process with respect to any deprivation of money.").  Problematic for Jones is his own assertion that the funds in his account were confiscated as contraband.  *See* Grievance 564234, ECF No. 1, p. 110 (arguing that mail containing contraband, per DOC ADM 801, shall be returned to the sender).  Additionally, documents attached to the Complaint, documents authored by Jones, acknowledge his receipt of Misconduct #B723363 in connection with his receipt of the $500 dollars.  (*Id.*, p. 114).  He notes that the "sanction imposed, February 2, 2015, [was] 'revoke all contraband'."  (*Id.*, p. 113).  Jones does not assert that he was denied due process at his misconduct hearing where he was advised that the sanction included the revocation of the contraband, i.e. the $500 dollars.  Moreover, one must have a protected liberty or property interest in order to invoke due process protections.  Here, Jones did not have a legitimate property interest in contraband.  See *Vega v. Mullen*, Civ. No. 16-4620, 2017 WL 1021064, at *4 (E.D. Pa. Mar. 3, 2017) (collecting cases); *see also Freeman v. Dep't of Corr.*, Civ. No. 07–2191, 2011 WL 1304830, at *3 - 4 (M.D. Pa. Mar. 31, 2011), *aff'd* 447 F. App'x 385 (3d Cir. 2011).  Therefore, Jones fails to state a due process claim against Supt. Tritt or Capt. Downs for the withdrawal of the contraband funds from his account.

    An appropriate order follows.


          /s/ William W. Caldwell
          William W. Caldwell
Date:  October 5, 2017     United States District Judge